FILED
2015 Aug-27  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **STEPHANIE YOLANDA CRAIG** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO: 2:14-cv-471-KOB** |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On August 10, 2010, the claimant, Stephanie Yolanda Craig, applied for supplemental security income under Title XVI of the Social Security Act. (R. 237-40). The claimant alleges disability commencing on January 1, 2010, based on a combination of impairments, including "lower back pain, left leg problems, hypertension, diabetes, heart problems, and asthma." (R. 237, 270).  The Commissioner denied the claimant's request, finding that she was not disabled for social security purposes. (R. 143-49) The claimant filed a timely request for a hearing before an Administrative Law Judge to challenge the Commissioner's decision, which subsequently occurred on April 11, 2012. (R. 150). The ALJ found that the claimant was not disabled at that time. (R. 116-129).

Following that decision, the Appeals Council remanded the claimant's case to conduct additional administrative action. (R. 134-37). On August 9, 2013, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and, thus, was ineligible for

supplemental security income. (R. 9-32). Further, the Appeals Council found no basis to review

the ALJ's decision on October 3, 2013. (R.1-6). As a result, the ALJ's decision became the final

decision of the Commissioner of the Social Security Administration. The claimant exhausted her

administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3). For reasons stated below, the decision of the Commissioner is REVERSED and

REMANDED.

## II. ISSUES PRESENTED

This case presents the following issue for review: whether the ALJ articulated a good

cause in rejecting the opinions of the claimant's treating physician, Dr. Scott Twilley, M.D.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must

affirm the Commissioner's decision if the Commissioner applied the correct legal standards and

if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham*

*v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.

1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims." *Walker*, 826

F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The

court will affirm those factual determinations that are supported by substantial evidence.

"Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971).

2

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the Administrative Law Judge, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the Administrative Law Judge about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, least to determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The ALJ must generally give the opinion of a treating physician considerable evidentiary weight. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2001); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ must give substantial weight unless a the ALJ articulates "good cause" for disregarding the opinion. *Schmorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation omitted).

## V. FACTS

The claimant, Stephanie Yolanda Craig, has a G.E.D. and was 49 years old at the time of the administrative decision at issue. She currently lives in Birmingham, Alabama. The claimant alleged disability beginning January 1, 2010, stating that she is unable to work because of her "lower back pain, left leg problems, hypertension, diabetes, heart problems, and asthma." (R. 265-70). She filed for SSI benefits on January 10, 2010. Her prior work experience includes employment primarily as a cafeteria worker and laborer. She also attempted to resume employment through a temporary position at a warehouse, but stopped shortly thereafter because of an increase in pain. (R. 271). The claimant alleges that her current condition meets the necessary requirements for one who is "disabled" under the Social Security Act.

*Physical Limitations*

The claimant's alleged disability involves a combination of injuries and conditions for which she previously sought medical treatment. She has a history of diabetes mellitus, hypertension, asthma, degenerative disk disease of the lumbar spine, depression, and psychosis. The record provides a vast number of hospital visits and physicians dating back to 2002. The claimant visited Cooper Green Hospital several times from 2002 to 2006 for, among other things, neck and back pain. (R. 309-48). Throughout that time, doctors could not find a significant abnormality in conjunction with the claimant's condition. (R. 344-46). On August 17, 2005, Dr. Minh H. Huynh, an emergency room physician, reviewed the claimant's chronic back pain at Cooper Green Hospital following an automobile accident.[1] (R. 316-18). Dr. Huynh diagnosed the claimant with lumbago (lower back pain), and no fractures or abnormalities were reported at that time. (R. 316).

On October 14, 2009, the claimant received treatment for head and back injuries at St. Vincent's Hospital after she fell on a set of cement steps. (R. 356-66). During that visit, the claimant complained of moderate back pain and a mild headache. Her physician examined several diagnostic images of her lumbar spine and chest, which failed to reveal any acute findings. (R. 365-66). The claimant also visited the emergency room at Princeton Baptist Memorial Center for headaches on November 6, 2009 and December 28, 2009. (R. 570-82). Doctors did not find any abnormalities during either visit, and subsequently released the claimant.

---

[1]The ALJ improperly noted that the claimant's visit to Dr. Huynh at Cooper Green Memorial Hospital occurred on August 17, 2009. The record reflects that the claimant's August 17th visit was in 2005 rather than 2009.

The claimant returned to St. Vincent's Hospital for a "throbbing" headache on March 28, 2010. (R. 442). Her examining physician did not make any acute findings regarding the claimant's condition during that visit. However, the claimant rated her pain level as a "10" on a scale of 1 to 10. Diagnostic imaging revealed a "mild patchy white matter disease[,]" but no other abnormalities. (R. 449).  The claimant visited St. Vincent's Hospital again on May 18, 2010 with complaints regarding her chest pain and left leg pain, as well as palpitations and nausea. She also reported tenderness in her left leg and foot. Doctors did not discover any abnormalities during the visit. (R. 427-39).

The claimant visited Dr. Scott Twilley, a treating physician who specializes in internal medicine, on June 15, 2010 with complaints of neck pain, back pain, and left leg muscle spasms. (R. 518). She rated her pain to be a "10" on a one to ten scale, and claimed that the pain originated from working. The claimant indicated that "increased activity" triggered her pain. (R. 518). A medical examination revealed pain at the claimant's extremities, which accentuated with her range of motion. Doctors also noted the existence of back pain and tension. The claimant added that she suffered from anxiety and depression associated with her pain. Dr. Twilley diagnosed the claimant with chronic cervical, thoracic and lumbar pain; degenerative joint disease; and a history of asthma, palpitations, headaches, hypertension, diabetes mellitus, fatigue, allergies, anxiety, and depression. (R. 520). The claimant visited St. Vincent's Hospital five days later on June 20, 2010 for complaints of vomiting; however physicians did not detect any abnormalities upon examination. (R. 412-26).

On July 16, 2010, the claimant visited the emergency room at Princeton Baptist Medical Center for left lower extremity pain. (R. 553-63). Specifically, the claimant reported tenderness

in her foot, ankle, and leg. However, all areas appeared normal upon inspection. (R. 554-55, 560). Doctors prescribed Lortab (pain medication) for the claimant's pain and discharged her at that time. (R. 555). The claimant then visited St. Vincent's Hospital on July 21, 2010 for left foot and leg pain. Diagnostic imaging revealed no abnormalities at that time, and the claimant received a prescription for pain medication. (R. 403-11). On July 26, 2010, the claimant returned to Dr. Twilley complaining of left foot and leg pain. (R. 508). At that visit, the claimant provided that, while her Robaxin (medication for pain and muscle spasms) prescription generally lacked the desired effects, the rest of her prescribed medication regiment successfully kept her pain under control. Dr. Twilley refilled the claimant's prescriptions following the visit. (R. 503).

The claimant returned to Princeton Baptist Medical Center again on August 12, 2010 with complaints of moderate lower extremity pain that "felt like it [was] on the inside."(R. 545). She reported tenderness and a limited range of motion, but doctors did not detect any abnormalities regarding her foot, ankle, and leg upon examination. After being prescribed Toradol (short-term pain medication) for pain, the claimant was discharged. (R. 549). The record also reflects that the claimant returned to Princeton Baptist Medical Center a day later for left leg pain, and doctors again found no abnormalities. (R. 548-51). Following her emergency room visits on August 12th and 13th, the claimant visited Dr. Twilley on August 25, 2010 for her neck, back, and left leg muscle pain. (R. 503). She also received treatment for sinus congestion and anxiety at that time. Her doctor continued the claimant's prescriptions for Robaxin and Lortab, and also prescribed Xanax. The claimant returned on September 22, 2010 requesting an increase in her medication, as she claimed that her prescribed medications failed to control her pain at that time. (R. 498).

On October 12, 2010, the claimant visited Dr. Samuel Flowers, a treating emergency

room physician, at Trinity Medical Center for a headache. She rated the headache as a "10" on one to ten scale and described it as the "worst headache" of her life. (R. 711). She reported no alcohol or tobacco use at that time. Dr. Flowers did not find any abnormalities during the visit. The claimant's headache subsided following a morphine treatment. (R. 716-17). Dr. Flowers diagnosed the claimant with acute cephalgia, hypertension, and chronic pain syndrome.  (R. 713).

The claimant visited Dr. Asad Ali Chaudhary, a neurologist, on October 16, 2010 for a medical examination. (R. 459-64). Dr. Chaudhary considered the claimant's back pain secondary to degenerative joint disease, and suggested left lumbar radiculopathy. He also described the claimant's hypertension as "well controlled" by her antihypertensive medication, and found no evidence of end-organ damage because of her hypertension at that time. (R. 464).  Dr. Chaudhary expressed a similar opinion regarding the claimant's diabetes, finding no evidence of end-organ damage secondary to diabetes. Dr. Chaudhary determined that the claimant had "mild to moderate" asthma and her palpitations exhibited an unclear etiology. (R. 464).  Further, his report provided that the claimant possessed good motor strength muscle bulk and tone, and described her as "neurologically in tact." (R. 464). He also reported no tobacco, alcohol, or drug use regarding the claimant's social history. (R. 461). Following her visit with Dr. Chaudhary, the claimant returned to Dr. Twilley on October 20, 2010 to refill her prescriptions. (R. 485). She acknowledged that her medication regimen successfully controlled her pain at that time.

On November 11, 2010, the claimant visited Dr. Flowers at Trinity Medical Center for another headache. (R. 691-96). This claimant again rated her headache as a "10" out of 10 on a one to ten scale. Dr. Flowers did not find anything abnormal regarding the claimant's condition. He diagnosed the claimant with acute cephalgia and treated her with Phenergan (medication for

motion sickness), Norflex (medication for muscle spasms) and Dilaudid (medication for pain). (R. 693). He then discharged the claimant in an improved condition. (R. 695). The claimant returned to Dr. Twilley six days later on November 17, 2010. At that visit, the claimant complained about an increase in lower back pain, and Dr. Twilley renewed her prescriptions. (R. 481).

The claimant returned to Dr. Flowers on December 11, 2010 with a headache. (R. 676-82). She described this headache, like the November 11th headache, as a "10" out of 10 on a one to ten scale. The claimant acknowledged the similarities of her headache when compared with her November 11th headache. (R. 676). She also mentioned that she exhausted her supply of Lortab 56 to 72 hours prior to her visit, and that she experienced headaches when she ran out of Lortab early. While Dr. Flowers observed that the claimant was in mild distress, he found no evidence of trauma, swelling, deformities, or other abnormalities. The claimant stated that her headache decreased following a morphine treatment. (R. 677). After reviewing the claimant's records, Dr. Flowers noted that her previous visits, as well as the December 11th visit, generally involved the fact that she exhausted her prescribed supply of Lortab early. (R. 677). The claimant stated that her doctor did not give her enough Lortab for the entire month. Dr. Flowers then informed the claimant that he would help her with withdrawal symptoms, but not with narcotic prescriptions. (R. 677).  Dr. Flowers found that the claimant had acute cephalgia, diarrhea, and opiate dependancy. (R. 678).

On December 14, 2010, the claimant returned Dr. Twilley and underwent a urine drug screening. The claimant tested positive for cocaine and opiates, and the claimant admitted to cocaine use. (R. 474). Dr. Twilley then instructed the claimant to find another primary care

9

physician. (R. 474-76). The claimant visited Princeton Baptist Medical Center on December 28, 2010, complaining of leg pain and a headache. Doctors did not detect any abnormalities at that time, determining that all sensation, joints, ranges of motion, gait, and weight bearing appeared to be normal. (R. 536-42). Further, the claimant's physician recommended an MRI after observing small white matter changes on the CT scan. (R. 537). The doctor provided the claimant with a prescription for Lortab following her medical evaluation, and did not impose any work restrictions at that time. (R. 538, 543).

On February 21, 2011, Dr. Twilley completed a physical capacities evaluation/clinical assessment of pain (PCECAP) form at the request of the claimant's attorney. (R. 523, 525). He found that the claimant could lift five pounds occasionally and one pound frequently. Dr. Twilley noted that the claimant could sit for two hours and stand for two hours. He also indicated that the claimant could rarely push, pull, climb, or balance. The report mentioned that she would not be able to stand, reach or frequently work around environmental hazards, and could not operate motor vehicles or work around hazardous machinery. Dr. Twilley stated that the claimant may likely miss more than four days of work per month as a result of impairments, as he felt her pain could potentially detract from her performance at work. He also recognized that physical activity increases the claimant's pain to such an extent that bed rest and medication is necessary. The form did not elaborate on checked answers with notes and did not refer to the claimant's drug screen results.

On February 24, 2011, the claimant visited the emergency room at Trinity Medical Center for eye pain. (R. 641-50). She stated that the pain was a "10" out of 10 on a one to ten scale. The claimant had exhausted her supply of Lortab and Lisinopril (medication for hypertension) at that

time, which led her to take an additional Metoprolol (medication for high blood pressure) daily. Dr. Flowers found no abnormalities, and diagnosed the claimant with right eyelid pain and hypertension. He provided the claimant with a prescription for Lortab, Metformin (medication for diabetes), and Lisinopril. He also instructed her to put warm compresses on her eye, and follow up at Cooper Green when necessary.

The claimant visited Princeton Baptist Medical Center on March 25, 2011 for her back pain. She stated that her pain commenced five days earlier. Doctors did not discover any acute abnormalities, but the claimant again rated her pain at "10" out of 10. The treating physician determined that the claimant sought medication refills. She was prescribed Metformin and Lisinopril and instructed to follow up at Cooper Green Hospital. (R. 527-35).

The claimant returned to Trinity Medical Center on April 26, 2011 for chest pain. (R. 585-617). Her treating physicians recognized a multitude of risk factors for coronary artery disease based on her hypertension, hypercholesterolemia, type 2 diabetes, and a positive family history regarding heart complications. (R. 587).  The claimant underwent coronary arteriograms and a left heart catheterization, which revealed normal coronary arteries, mild left ventricular hypertrophy with normal left ventricular systolic function and ejection fraction. (R. 604). Dr. William Stetler, a cardiologist, identified minimal irregularities in the right renal artery, but found no significant stenosis. (R. 605). He diagnosed the claimant with chest pain, hypertension, hypercholesterolemia, type 2 diabetes mellitus, asthma, and chronic back pain. (R. 591). Her symptoms resolved during hospitalization, and her treating physician discharged her with a prescription for her medications.

On May 7, 2011, the claimant returned to Trinity Medical Center for leg pain and groin

11

pain stemming from her heart catheterization. (R. 619-39). She stated that her symptoms worsened, and rated her pain as a "10" out of 10. Other than a two centimeter swollen area on the claimant's groin, her evaluation was relatively normal. Dr. James Cranford, an emergency room physician, noted that the claimant did not report back pain, joint pain or leg pain at that time. (R. 620). However, he discovered a small hematoma without evidence of psuedoaneurysm or fistula. Dr. Cranford diagnosed the claimant with post catheterization hematoma, minor dehydration, and generalized weakness. (R. 621). He also instructed the claimant to consume fluids other than caffeinated beverages, and to wait until the following Monday to take her blood pressure medication.

The claimant visited Cooper Green Mercy Hospital for her chronic back and leg pain on June 14, 2011. (R. 736-41). Dr. Willard Mosier, who is a pulmonologist in Birmingham, treated her during this visit. The claimant stated that she ran out of her Lortab prescription and requested a refill. She also requested new prescriptions for her regular medications. Dr. Mosier did not find any abnormalities during the claimant's medical examination. He prescribed Mobic for chronic pain management, and wrote new prescriptions for Meloxicam (medication for arthritis pain), Metropolol, and Gabapentin (medication for nerve pain).

On September 16, 2011, the claimant visited Dr. Adrienne Carter, an internal medicine specialist, at Cooper Green Mercy Hospital for her hypertension, depression, asthma, diabetes mellitus, and lower back pain. (R. 742-52). Dr. Carter conducted a urinalysis during the visit. The test came back negative for cocaine, opiates, marijuana, or methadone, and positive for benzodiazepines (i.e. anxiety drugs). Diagnostic imaging failed to reveal any abnormalities at that visit. The claimant also reported that her depression stemmed from the death of her son. Dr.

Carter prescribed Celexa for the claimant's depression, while also continuing the claimant on her regularly prescribed medications.

The claimant returned to St. Vincent's on both October 16, 2011, and January 7, 2012. The first visit involved a painful cough. (R. 754-65). The claimant described the cough as a "10" on a one to ten scale. Chest x-rays revealed no abnormalities and the treating physician issued a diagnosis of acute sinusitis.  The claimant's January 7th visit involved bilateral pain and tingling in her lower extremities, and doctors found no abnormalities. (R. 766-71).

On April 1, 2012 and June 14, 2012, the claimant visited Trinity Medical Center for complaints regarding psychiatric problems.  (R. 805-24, 889-915). She recalled being nervous and crying for two weeks prior to her visit on April 1st. The claimant denied any physical complaints at that time. The doctor also noted the appearance of cocaine on a urine drug screening prior to her visit. (R. 890). The record indicates that the claimant received a diagnosis of acute anxiety on her April 1st visit. (R. 893).  On her June 14th visit, doctors diagnosed the claimant with psychosis. (R. 810).  Following two days of hospitalization, the claimant's condition improved and doctors discharged her from the hospital. The record indicates that the claimant had a "history of substance abuse[,]" but also noted that she had a negative urine drug screening at that visit. (R. 809).

Doctors also diagnosed the claimant with carpal tunnel syndrome on August 15, 2012 after visiting Cooper Green Hospital for hand pain. (R. 916-28). Following this diagnosis, the claimant received an intramuscular injection to alleviate her symptoms during the visit. She returned to Trinity Medical Center on August 29, 2012 for a laceration to her left hand. She received a prescription for Lortab for her pain. Overall, the record provides that the injury was

13

unremarkable. (R. 858-61). On October 3, 2012, the claimant returned to Trinity Medical Center for pain in her right knee. (R. 843-46). The claimant described her pain as a "10" on a one to ten scale. (R. 844). Doctors did not detect any abnormalities or physical impairments during her medical examination, and diagnosed the claimant with arthralgia (joint pain) and acute pain to the right leg and knee. (R. 846). The claimant returned on January 8, 2013 with complaints of chest pain, syncope, nausea and headache. (R. 779-805). Doctors again did not find any abnormalities; however the claimant was hospitalized overnight for observational purposes. The doctors discharged the claimant in stable condition. On January 29, 2013, the claimant visited Cooper Green Mercy Hospital with back and leg pain. She described the pain as "10" out of 10 overall, but had normal range of motion and psychiatrically and neurologically in tact at that visit. (R. 923). The claimant noted that she smoked a pack of cigarettes a day for ten years, and also acknowledged her history of cocaine abuse at that visit. (R. 923). After physicians determined that she was stable, the claimant was discharged and remained on her medications. (R. 916-24).

The claimant returned to Trinity Medical Center on February 26, 2013 for chest and head pain. However, doctors did not find anything abnormal during the medical examination. Her treating physician diagnosed her with atypical chest pain and acute cephalgia. The claimant received Toradol and was discharged. (R. 826-41). On April 23, 2013, the claimant was treated at Cooper Green Mercy Hospital for left shoulder and wrist pain. (R. 916-23). Doctors found the claimant's diabetes to be uncomplicated and described her hypertension as benign. While the claimant exhibited some restriction in her left shoulder's range of motion, her examination did not render anything remarkable. She received pain medication; however the doctor instructed her

14

to conduct pain management through her primary care physician, and not orthopedics. (R. 917).

On April 26, 2013, Dr. Max Michael, a consulting physician specializing in internal medicine, completed a PCECAP pursuant to a request by the claimant's attorney.(R. 777-78). Dr. Michael provided that the claimant could lift five pounds frequently, and ten pounds occasionally. Similar to Dr. Twilley, Dr. Michael indicated that the claimant could "never" perform a majority of the tasks listed on the PCECAP, and could "rarely" push, pull, grasp, twist, or operate motor vehicles. Further, Dr. Michael indicated that the claimant "can't do any work according to her condition."

### The ALJ Hearing

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 150-52)**.** Following the ALJ's decision to also deny the request, the claimant requested review by the Appeals Council. (R. 73). On March 18, 2013, the Appeals Council remanded the case to conduct additional administrative action. (R. 133-37). The Appeals Council found that the ALJ's residual functional capacity assessment failed to adequately accommodate the claimant's mental impairments; that the ALJ incorrectly listed "back pain" as a severe impairment; and that the ALJ failed to indicate whether the claimant has a severe cardiovascular impairment.  (R. 133-134).

An ALJ heard the claimant's case for a second time on June 26, 2013. (R. 190). At the hearing, the claimant testified that her lower back problems commenced in 2009. (R. 41). Specifically, she testified that the pain is present "all the time" in her spine and lower back. (R. 41-42) The claimant stated that she spends "four to six hours lying down" on a regular day, and that she takes Lortab three to four times a day. (R. 42). According to the claimant, her pain

intensity scale rating is an "eight" on a scale of one to ten when she takes her medication. *Id.* She also provided that her high blood pressure has not improved, she suffers from diabetic neuropathy in her legs, and she has anxiety and depression. (R. 42-44). The claimant stated that she could sweep around her house, but could not do a substantial amount of household chores without assistance. She also claimed that she could lift two to five pounds. (R. 44, 52).

A vocational expert, Dr. Julia Russell, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 59-64). The ALJ asked Dr. Russell to "assume a person of Ms. Craig's age, education and work experience . . . who is capable of light work as it's regulatorily defined." (R. 59). He stated further, however, that the individual "is precluded from climbing ladders, ropes or scaffolds and is also precluded from any exposure to the operation control of moving machinery and any exposure to unprotected heights or hazardous machinery." (R. 59-60). The ALJ also discussed postural limitations, stating that "climbing of ramps and stairs, balancing, stooping, kneeling, crouch and crawling would be limited to occasional[,]" and "[b]ilateral reaching would also be limited to occasional." *Id.* Finally, the ALJ asked Dr. Russell to assume, "from a non-exertional mental perspective, the work should require no more than the understanding, remembering and carrying out simply instructions . . . with no more than occasional decision-making and changes in the workplace[,]" and also that "interaction with the public should . . . be limited to no more than occasional." *Id.*

The ALJ then questioned Dr. Russell as to whether any employment opportunities existed under those restrictions. (R. 60). Dr. Russell provided that one could work as a bakery worker, mail sorter, or a sorter under the exertion levels and restrictions provided. (R. 61). The ALJ then asked her to assume the same restrictions, but with a sedentary exertion level. *Id.* Under those

16

circumstances, Dr. Russell stated that a product assembler, a document preparer, or a sealer position could be available. (R. 62). However, Dr. Russell acknowledged that the above-referenced positions were not flexible with regard to unscheduled breaks to alleviate pain. (R. 63). Further, they were not positions that would accept excessive absences because of her pain. *Id.*

### The ALJ's Decision

On August 9, 2013, the ALJ denied the claimant's request for supplemental security income for a second time. He agreed that the claimant had not engaged in substantial gainful activity since August 10, 2010, and also found that the claimant's asthma, hypertension, diabetes mellitus, degenerative disk disease of the lumbar spine, osteoarthritis, depression, and psychosis were indeed severe impairments. However, he ultimately found that the "claimant [did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."(R. 23). According to the ALJ, "[n]o treating source, examining source or medical expert has so concluded."

Specifically, the ALJ found the following with regard to the claimant's subjective complaints of pain:

> [T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however the claimant's statements and other allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent that they are inconsistent with the objective medical evidence of record, and the claimant's own reports of at times of no pain or pain well managed on her medication regimen . . . . Notably, no physical abnormalities were observed upon examination of the claimant by Dr. Mosier, Dr. Carter, Dr. Willard, or Dr. Flowers. Dr. Cranford noted no abnormality other than a small hematoma, and Dr. Stetler reported after extensive evaluation that the claimant had some minimal irregulatiry in the right renal artery, but no significant stenosis. The severity of

17

pain alleged by the claimant in the absence of objective medical abnormalities consistent with the pain is indicative of exaggeration.

(R. 25).

The ALJ stated that the claimant was only subject to a "mild restriction" with regard to her daily activities, as she was "still able to prepare meals, shop and handle her personal finances." (R. 23). He reasoned that many of the conditions that the claimant lists as substantial impairments, such as her diabetes or hypertension, are "under good control." (R. 25). He also stated that the claimant's "degenerative disk disease and osteoarthritis have resulted in no significant functional limitations." (R. 25)  Further, the ALJ "found no evidence of record that convinces the undersigned that the claimant must lie down from four to six hours daily . . . . " (R. 25).

The ALJ also rejected the opinions of the claimant's treating physician, Dr. Twilley, stating that his PCECAP was "inconsistent with the claimant's treatment records, including treatment records obtained from Drs. Twilley and Michael." (R. 25). The ALJ discussed the claimant's treatments with Dr. Twilley when addressing her medical history; however he did not elaborate on the referenced inconsistencies when discrediting Dr. Twilley's medical opinions. Instead he afforded more weight to Dr. Flower's findings and opinions, "who noted no physical abnormalities upon repeat examinations, and determined the claimant's headaches were related to opiate dependency and withdrawal."  (R. 26). The ALJ also determined that the claimant's headaches were not related to the claim, as he found they were "opiate-related" based on the medical history provided. (R. 26).

The ALJ found that "the claimant has the residual functional capacity to perform light work" based on Dr. Russell's vocational testimony and employment suggestions. (R. 24). He

listed the claimant's restrictions regarding ladders, ropes, scaffolds and exposure to unprotected

heights. He stated that the claimant could occasionally climb ramps, balance, stoop, crouch or

kneel. The claimant also would be able to perform light work in a setting that required her to

reach overhead bilaterally. The ALJ limited the claimant's light work to only occasional

exposures to heat, cold, dust, odors, gases and chemicals. Her position also must only require

"occasional decision making and changes in the workplace." (R. 24).

## VI. DISCUSSION

**A.      The ALJ Failed to Establish Good Cause for His Decision to Reject the Opinions of
Dr. Scott Twilley, the Claimant's Treating Physician.**

The claimant argues that the ALJ improperly rejected the evidence of her treating

physician, Dr. Scott Twilley.

The ALJ must give the opinion of the claimant's treating physician "substantial or

considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d

1436, 1440 (11th Cir. 1997). "Good cause" is established when the: "(1) treating physician was

not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "When electing to disregard the

opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.*

The ALJ gave little weight to the opinion of Dr. Twilley on the PCECAP he submitted

for the claimant. More specifically, the ALJ concluded that the claimant's treatment records were

not consistent with Dr. Twilley's PCECAP.  In doing so, the ALJ stated the following:

> As for the opinion evidence, the undersigned gives little weight to the PCECAPs given by
> Dr. Twilley and Michael. They are inconsistent with the claimant's treatment records,

19

including treatment records obtained from Drs. Twilley and Michael.

(R. 26)

He also rejected the opinions of Dr. Michael based on the same reasoning; however, no applicable treatment records from Dr. Michael exist in this case. It does not appear that the claimant received treatment from Dr. Michael. Instead, Dr. Michael simply filled out a two-page PCECAP form at the request of the claimant's attorney. (R. 777-78).

The ALJ afforded "[g]reat" weight to Dr. Samuel Flowers, another treating physician, based on the fact that "Dr. Flowers' findings and opinions are well supported by medically accepted clinical and diagnostic techniques, and consistent with the great weight of medical evidence on record[.]"

To reject the opinion of a claimant's treating physician, the ALJ must articulate good cause in compliance with the standards set forth above. *Phillips*, 357 F.3d at 1241. While the ALJ in this case states conclusorily that inconsistencies exist between Dr. Twilley's PCECAP and his treatment records, he did not specifically identify any inconsistencies when referring to Dr. Twilley's opinions. Further, the inconsistencies discussed in the ALJ's decision relate to the claimant's subjective statements regarding her pain, not the opinions of Dr. Twilley as to her condition.

To establish good cause, the ALJ must elaborate as to why he rejected the opinions of the claimant's treating physician with specific examples establishing the basis for doing so. The standard for "good cause" requires the ALJ to "clearly articulate its reasons." *Phillips*, 357 F.3d at 1241 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440).

Here, the ALJ failed to do so. As a reviewing court, this court cannot and should not sift

through the record and attempt to speculate about what the unidentified inconsistencies might be. Rather than supplying this court with his reasoning as to why Dr. Twilley's opinions were inconsistent, the ALJ in this case provides a conclusive statement indicating that he "affords little weight" to Dr. Twilley's opinions regarding the claimant. Such a statement regarding a rejection of a treating physician's opinion is not enough to justify good cause, and therefore the ALJ did not apply the proper legal standard in this case.

This court is troubled by the evidence in the record reflecting that the claimant is exaggerating her pain and symptoms because of drug dependency. However, the ALJ did not point to or discuss that evidence as part of his rejection of Dr. Twilley's opinion and explain how it is inconsistent with Dr. Twilley's findings. Accordingly, based on the record provided, this court concludes that the ALJ failed to establish good cause in rejecting the medical opinions of the claimant's treating physician, Dr. Scott Twilley. Therefore, this court reverses the decision of the Commissioner and remands for further administrative proceedings in compliance with the proper legal standard referenced above.

## VII. CONCLUSION

For the reasons as stated above, this court concludes that the decision of the Commissioner is not supported by substantial evidence and is to be REVERSED and REMANDED. The court will enter a separate order to the effect simultaneously.

DONE and ORDERED this 27th day of August, 2015.

_Karon O. Bowdre_
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE